Samuel J. Silverman, S.
Petitioner, a resident of East Germany, entitled by intestacy to the residuary of decedent’s estate, sought an order directing that upon his appearance before the court and his identifying himself, certain moneys held on deposit with the Director of Finance of the City of New York for his benefit, should he paid to him.
The governing statute is SCPA 2218.
*47 1. For the purposes of the present proceeding, petitioner explicitly renounces any attack on the constitutionality of the statute.
2. The statute, as it read prior to the amendment of 1968, in essence provided that where it appeared that a beneficiary would not have the benefit or use or control of money, the decree may direct that the money be paid into court for the benefit of the beneficiary. And in the case of nonresidents of the United States, the burden of proof on this issue is on the alien beneficiary.
In Zschernig v. Miller (389 U. S. 429) the Supreme Court held a somewhat similar Oregon statute, or the application thereof by the Oregon courts, to be unconstitutional as an interference with the exclusive powers of the Federal Government in the conduct of the foreign affairs of the United States. In Matter of Leikind, (22 N Y 2d 346) the Court of Appeals distinguished the Zschernig case and held the New York statute constitutional.
After the decision in the Zschernig case, the statute was amended to add a new subdivision (1) reading in part as follows: “ (a) Where it shall appear that an alien legatee, distributee or beneficiary is domiciled or resident within a country to which checks or warrants drawn against funds of the United States may not be transmitted by reason of any executive order, regulation or similar determination of the United States government or any department or agency thereof, the court shall direct that the money or property to which such alien would otherwise be entitled shall be paid into court for the benefit of said alien or the person or persons who thereafter may appear to be entitled thereto. The money or property so paid into court shall be paid out only upon order of the surrogate or pursuant to the order or judgment of a court of competent jurisdiction.”
Concededly, East Germany is a country to which checks or warrants drawn against funds of the United States may not be transmitted and, therefore, paragraph (a) of subdivision 1 of SOPA 2218 applies.
3. It would appear that the standard to be applied by the Surrogate on an application to withdraw the funds under paragraph (a) of subdivision 1 is the standard set forth in subdivision 2, i.e., whether the beneficiary would have the benefit or use or control of the money.
4. Petitioner argues that no such showing is necessary or relevant where the legatee personally appears in the United States to collect the money and apparently some cases have so held.
*48 (a) I do not see why the personal appearance of the legatee should make a difference unless- it is shown that he will have the benefit, use or control of the funds.
(b) It is argued that because the Federal Government will allow moneys to be paid to such aliens if they appear in countries to which checks or warrants drawn against funds of the United States may be transmitted, that therefore paragraph (a) of subdivision 1 of section 2218 has no applicability where the legatee appears in the United States. But the Federal regulation and the New York statute are neither co-extensive nor do they necessarily have the same purpose. The New York statute, on its face, covers the case of any alien legatee who is domiciled or resident within one of the described countries. It is the domicile or residence of the alien legatee which is determinative. The statute does not make an exception for the fact that such an alien may appear in the United States temporarily to collect the money.
5. Accordingly, I directed a hearing on the issue of whether petitioner would have the benefit or use or control of the money. Such a hearing has now been held.
I hold that petitioner has sustained the burden of proof of showing that he would have the benefit, use and control of the money.
Due to the differing economic and political systems, what a resident of East Germany can use money for in that country cannot be identical with what the money can be used for in this country. To require identical possibility of use of the money in East Germany as in this country would in effect mean that under the guise of safeguarding to petitioner the benefit, use and control of the money, he would be denied such benefit, use or control completely.
Like some other countries, East Germany has strict foreign exchange controls so that (a) petitioner will have to exchange his money for East German marks at the official rate of exchange of 4.20 East German marks to the dollar, and (b) if he wished then to re-exchange his East German marks for foreign currency he would find it impossible to do so, except in narrowly circumscribed situations or illegally on a black market at rates much less favorable to him than the rate at which he is required to exchange dollars for East German marks.
But petitioner is not a dealer in foreign exchange. He is a salaried employee who lives in East Germany. And within East Germany he can use the money with a purchasing power roughly comparable to its purchasing power in this country.
*49 For example, the amount here involved is approximately $10,000 so that he will get approximately 42,000 East German marks for it. There will be no East German tax or deduction from this amount (except relatively nominal bank charges). Petitioner’s salary- — -apparently a rather low one even hy East German standards — is something over 600 marks per month or approximately 7,500 East German marks per year. He will thus receive from his $10,000 inheritance the equivalent of five or six years ’ salary. This is surely as favorable as the equivalent in salary years of $10,000 in this country. It appears that many items such as clothing, a house, etc., can be purchased for prices which are roughly comparable — indeed cheaper — than comparable items in this country (taking the East German mark at 4.20 to a dollar). Imported and “ luxury ” items, on the other hand, are more expensive. Some of these “ luxury ” items are items which we would not consider luxuries at all, e.g., refrigerator or television set.
Apparently, it is even possible for petitioner to engage in a small business even employing a few employees if he wishes, though of course as I think is well known, Communist countries discourage or prohibit private enterprise that involves the employment — “ exploitation ” in their terms — of employees in commercial and economic enterprises, or private ownership of the means of production or distribution. On the other hand, private ownership of property for personal use or consumption is apparently permitted quite freely. The amount here is not so large that it cannot be used for private use or consumption.
On the whole, 1 am satisfied that if petitioner is permitted to receive the $10,000 inheritance, and if as he intends and is required under East German law to do, he exchanges this money for East German marks at 4.20 East German marks to the dollar, he will have the use, benefit and control of that money roughly comparable, within the limitations of the Communist system, to the use, benefit and control of a similar amount in this country.
Accordingly, the application to withdraw the funds is granted.